**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| SANDSTONE INNOVATION, LLC,<br><br>     *Plaintiff,*<br><br>     v.<br><br>APPLE INC.,<br><br>     *Defendant.* | No. 7:26-CV-00094-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S RULE 12(B)(6) MOTION TO DISMISS**
**PLAINTIFF SANDSTONE INNOVATION, LLC'S AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)............................................................................................4, 12, 16, 20

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016).........................................................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................................3

*Ask Sydney, LLC v. Amazon.com Services, LLC,*
688 F. Supp. 3d 403 (W.D. Tex. 2023)................................................................................9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................................................3

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018).........................................................................................16

*Beteiro, LLC v. DraftKings Inc.,*
104 F.4th 1350 (Fed. Cir. 2024) .......................................................................................14

*Bilski v. Kappos,*
561 U.S. 593 (2010).............................................................................................................4

*Bot M8 LLC v. Sony Corp. of Am.,*
4 F.4th 1342 (Fed. Cir. 2021) .........................................................................................3, 5

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018).........................................................................................19

*CardioNet, LLC v. InfoBionic, Inc.,*
955 F.3d 1358 (Fed. Cir. 2020).........................................................................................15

*Chapterhouse, LLC v. Shopify, Inc.,*
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018).............................10

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019)......................................................................................18, 20

*Collins v. Morgan Stanley Dean Witter,*
224 F.3d 496 (5th Cir. 2000) ...............................................................................................8

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)..................................................................................16, 17

*Datanet LLC v. Dropbox Inc.*,
  No. 6:22-CV-01142-OLG-DTG, 2023 WL 7118041 (W.D. Tex. Oct. 27,
  2023) ...............................................................................................................................11

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004)......................................................................................10

*Electric Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...............................................................................13, 17

*Golden v. Google LLC*,
  2025 WL 1752485 (Fed. Cir. June 25, 2025) .........................................................11

*GoTV Streaming, LLC v. Netflix, Inc.*,
  166 F.4th 1053 (Fed. Cir. 2026) ..............................................................................17, 19

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
  605 F. Supp. 3d 905 (W.D. Tex. 2022).........................................................5, 10, 21

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
  608 U.S. __, 146 S. Ct. 1391 (2026)..................................................................3, 5

*IFPower Co., Ltd., v. ASUSTeK Computer, Inc.*, No. 1:24-cv-00131-DAE, ECF
  No. 41 (W.D. Tex. Mar. 26, 2025) .............................................................................5

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
  285 F.3d 1046 (Fed. Cir. 2002)......................................................................................11

*Longitude Licensing Ltd. v. Google LLC*,
  2025 WL 1249136 (Fed. Cir. April 30, 2026) ............................................12, 13, 14

*Metricolor LLC v. L'Oreal S.A.*,
  791 F. App'x 183 (Fed. Cir. 2019) ................................................................................9

*Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc*,
  No. 6:21-CV-01178-ADA, 2023 WL 2904583 (W.D. Tex. Apr. 11, 2023) .............6

*Recentive Analytics, Inc. v. Fox Corp.*,
  134 F.4th 1205 (Fed. Cir. 2025) ..................................................................................16

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018).......................................................................................4

*Shamoon v. City of San Antonio*,
  No. SA-18-CV-00718-XR, 2025 WL 1356399 (W.D. Tex. Apr. 30, 2025) .............3

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017).................................................................................15

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016).............................................................13, 15, 17, 18

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)........................................................................15, 20

*US Pat. No. 7,679,637 LLC v. Google LLC*,
    164 F.4th 1373 (Fed. Cir. 2026) .........................................................................4, 20

*VDPP, LLC v. Gen. Motors Co.*,
    No. 1:23-CV-00956-RP, 2024 WL 4958307 (W.D. Tex. July 22, 2024)...................5

*VE Opening LLC v. Sprinklr, Inc.*,
    No. 1:25-CV-01736-ADA, 2026 WL 993979 (W.D. Tex. Apr. 10, 2026) ..............20

*Vervain, LLC v. Micron Tech., Inc.*,
    No. 6:21-cv-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ..................3, 5

*WirelessWerx IP, LLC. V. Verizon Communic's, Inc.*,
    No. 7:25-CV-00198, ECF No. 31 (W.D. Tex. Oct. 6, 2025)...................................11

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) .............................................................................13

**Statutes**

35 U.S.C. § 101............................................................................................... *passim*

35 U.S.C. § 271......................................................................................................2

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF THE ISSUES.............................................................................. 2

III.  BACKGROUND ........................................................................................................ 2

IV.   LEGAL STANDARDS .............................................................................................. 3

    A.   Motions to Dismiss Under Rule 12(b)(6) ............................................................ 3

    B.   Patent Infringement.............................................................................................. 3

    C.   Patent Eligibility Under 35 U.S.C. § 101............................................................. 4

V.    ARGUMENT............................................................................................................... 4

    A.   Sandstone's Amended Complaint Should Be Dismissed Because It Fails to Plausibly Allege Infringement of Either Asserted Patent...................................... 4

        1.   Sandstone's Allegations Are Insufficient to State a Claim of Direct Patent Infringement....................................................................................... 4

        2.   Sandstone's Post-Suit Induced and Willful Infringement Claims Should Also Be Dismissed ......................................................................... 10

    B.   The Claims of the '652 Patent Are Not Patent-Eligible ..................................... 12

        1.   *Alice* Step One: The Claims Recite the Abstract Idea of Collecting Image and Head Position Data and Analyzing It to Determine Eye Gaze ...................................................................................................... 12

        2.   *Alice* Step Two: The Claims Fail to Add an Inventive Concept............... 16

        3.   The Remaining '652 Patent Claims Likewise Are Not Patent Eligible........................................................................................................ 18

        4.   Further Amendment Would Be Futile ....................................................... 20

VI.   CONCLUSION.......................................................................................................... 20

## I.    INTRODUCTION

Defendant Apple Inc. ("Apple") moves to dismiss Plaintiff Sandstone Innovation, LLC's ("Sandstone") Amended Complaint for Patent Infringement under Fed. R. of Civ. P. 12(b)(6).

Sandstone pleads only conclusory infringement allegations that parrot the governing legal standards and the claim language of the two asserted patents, U.S. Patent No. 7,963,652 (the "'652 patent") and U.S. Patent No. 10,248,852 (the "'852 patent") (collectively, "asserted patents"). Though Sandstone attaches claim charts that purport to allege infringement of a single claim of each asserted patent, these charts merely repeat the same generic screenshots or general descriptions about Apple's accused Vision Pro product without attempting to show *how* Sandstone alleges infringement of a given limitation, much less *each* limitation. And, tellingly, Sandstone ignores that the same sources it cites in its Amended Complaint confirm that the accused product does not, in fact, infringe the asserted claims. Taken together, Sandstone's Amended Complaint is insufficient under the well-established *Iqbal/Twombly* pleading standard, and Sandstone's infringement claims should be dismissed with prejudice.

In addition, even if Sandstone had managed to plausibly plead infringement (it did not), Sandstone's claims as to the '652 patent should be dismissed because its claims are directed to ineligible subject matter under 35 U.S.C. § 101. The '652 patent claims nothing more than the abstract idea of collecting image and head position data and analyzing it to determine eye gaze. The specification teaches that the claimed steps are performed using generic imaging equipment and conventional computer techniques, and the '652 patent does not claim, or even disclose, inventive technology for performing those functions. The Federal Circuit has consistently held that such claims are impermissibly abstract and lack an inventive concept. Because the subject matter ineligibility of the '652 patent stems directly from the claim language, amendment would be futile, and Sandstone's '652 patent-based claims should be dismissed with prejudice.

1

## II.    STATEMENT OF THE ISSUES

This motion raises the following issues: *first*, whether the Amended Complaint fails to plausibly allege a claim for patent infringement for either asserted patent; and *second*, whether the claims of the '652 patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## III.    BACKGROUND

Sandstone filed a Complaint on March 13, 2026 (ECF No. 1) and an Amended Complaint on April 27, 2026 (ECF No. 9). Sandstone's Amended Complaint purports to allege that Apple infringes two patents, the '652 patent and the '852 patent, under 35 U.S.C. § 271. ECF No. 9 ¶¶ 12, 15, 24, 27; Ex. 1 ('652 patent); Ex. 3 ('852 patent). In addition, Sandstone alleges that Apple "knowingly and intentionally induces infringement" and willfully infringes the asserted patents. *Id.* ¶¶ 14, 18, 26, 30.

The asserted patents do not belong to the same patent family, and the claims of each patent recite different purported inventions. The '652 patent, titled "Method and Apparatus for Calibration-Free Eye Tracking," claims inventions for eye-gaze tracking by analyzing images without calibration. *See* '652 patent at cl. 1. The '852 patent, titled "Method for Recognizing Facial Expression of Headset Wearing User and Apparatus Enabling the Same," by contrast, relates to "expression recognition." '852 patent at 2:26–32. Claim 1 of the '852 patent, for example, recites use of a "sensing unit" that measures "compression" or "stretching" of "expression information from around the eyes." *See* '852 patent at cl. 1.

To plead the alleged infringement, Sandstone relies exclusively on a claim chart for each patent. ECF No. 9, Ex. 2 ('652 patent claim chart) & Ex. 4 ('852 patent claim chart). Sandstone's claim charts include only a single claim—claim 1 of each patent—and purport to allege infringement by a single product—Apple's Vision Pro product. Sandstone's claim charts, however, merely recite the claim language and copy the same generic screenshots for multiple

claim elements, providing nothing more than a formulaic recitation of the claim elements that fails to identify an infringement theory for each claim. Outside of the claim charts, Sandstone does not plead any specific factual allegation to support its claims of induced or willful infringement.

## IV.    LEGAL STANDARDS

### A.    Motions to Dismiss Under Rule 12(b)(6)

A party may move to dismiss a claim if the complaint has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must take well-pled facts as true but is not required to accept "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not survive where it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. __, 146 S. Ct. 1391, 1399 (2026) (quoting *Ashcroft*, 556 U.S. at 678).

### B.    Patent Infringement

"To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets *each* limitation of the asserted claim or claims." *Shamoon v. City of San Antonio*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *4 (W.D. Tex. Apr. 30, 2025) (internal quotations and citations omitted) (emphasis added). Moreover, "the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

3

### C. Patent Eligibility Under 35 U.S.C. § 101

Patent eligibility under Section 101 is a "threshold" issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). That threshold issue "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). "A patent may be determined ineligible at the Rule 12(b)(6) stage when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1380 (Fed. Cir. 2026) (internal citations and quotations omitted).

The Supreme Court has articulated a two-step test for patentability under Section 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216–24 (2014). At step one, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. If the claims are directed to a patent-ineligible concept, the court proceeds to step two, at which it "search[es] for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (internal citations and quotations omitted).

## V. ARGUMENT

### A. Sandstone's Amended Complaint Should Be Dismissed Because It Fails to Plausibly Allege Infringement of Either Asserted Patent

#### 1. Sandstone's Allegations Are Insufficient to State a Claim of Direct Patent Infringement

Sandstone's Amended Complaint fails to plausibly allege direct patent infringement of the asserted patents. The attached claim charts purporting to provide infringement allegations for claim 1 of each asserted patent (ECF No. 9, Exs. 2 & 4) fall short of the pleading standard. Sandstone makes no allegation as to any other claim of either asserted patent.

4

Sandstone's attached claim charts copy the language of claim 1 and paste certain internet screenshots without explaining how the accused Vision Pro product meets the elements of the asserted claims. *See id.* In so doing, Sandstone wholly fails to support its entitlement to relief with factual content. *See Bot M8*, 4 F.4th at 1353 ("[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."); *see also Hikma*, 608 U.S. __, 146 S. Ct. at 1399.

The mere fact that Sandstone attached claim charts to its complaint does not save Sandstone; the legal framework here does not elevate form over substance. As this Court has explained, "a direct infringement claim is not sufficiently pleaded so long as plaintiff provides a claim chart or element-by-element mapping. The Court must consider whether the factual allegations therein, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Vervain*, 2022 WL 23469, at *7 (internal quotations and citations omitted). Allegations, like those here, that "merely track the claim language" are "insufficient to give rise to a reasonable inference that the [accused product] practices the claims." *Id.*; *see also Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 916 (W.D. Tex. 2022) (dismissing inadequately pleaded infringement claims with prejudice and explaining that "[t]he mere recitation of claim language … is insufficient to assert a claim, even on a motion to dismiss"); *VDPP, LLC v. Gen. Motors Co.*, No. 1:23-CV-00956-RP, 2024 WL 4958307, at *3 (W.D. Tex. July 22, 2024) (recommending dismissal based on insufficient claim charts).

Nor is it sufficient to merely chart screenshots, where such images "do not allow for an inference of infringement." *IFPower Co. Ltd. v. ASUSTeK Computer Inc.*, No. 1:24-cv-00131-DAE, ECF No. 41 at 9–10 (W.D. Tex. Mar. 26, 2025) (dismissing plaintiff's claims for direct

infringement where the claim chart included photographs "without explanation as to how the photographs reveal infringement"). This Court has routinely found claim charts that copy only screenshots and threadbare recitals of the claim language, like Sandstone's here, to be insufficient to state a claim. In *De La Vega v. Microsoft Corp.*, for example, this Court dismissed with prejudice the plaintiff's complaint where it "presented [only] three screenshots of evidence without explaining how that evidence shows that [the defendant] performs the [claimed] step." No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020). There, the plaintiff provided "a short description for each limitation in claim 1, all except for the 'coupling' limitation." *Id.* But without "even a short written description of how the accused instrumentalities meet the 'coupling' limitation," the plaintiff failed to plausibly state a claim. *Id.*

Similarly, in *Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*, this Court dismissed the complaint where the plaintiff "provided a chart that display[ed] the claim language on one side and the accused product details on the other, accompanied by a brief description." No. 6:21-CV-01178-ADA, 2023 WL 2904583, at *4 (W.D. Tex. Apr. 11, 2023). The defendant moved for dismissal based on the plaintiff's "threadbare claim chart, containing nothing more than screenshots … and conclusory statements." *Id.* This Court agreed, taking issue with the plaintiff's failure to explain how the accused product met a missing limitation that required the existence of a server. *Id.* Because the plaintiff "fail[ed] to identify an essential element in the claim chart," the pleadings were insufficient to state a claim for direct infringement. *Id.*

As described further below, in relying almost entirely on unexplained, cut-and-paste screenshots, the claim charts attached to Sandstone's Amended Complaint mirror those found to be insufficient in *De La Vega* and *Ortiz*.

*The '652 patent.* The '652 patent claims a method for eye gaze tracking "that *does not require calibration* of a camera, measurement of eye geometry, or tracking of a cursor, dot pattern, or other image on a screen by the subject through a trajectory." '652 patent at 1:20–25 (emphasis added). Specifically, limitation 1[e] of the '652 patent requires that the user's eye gaze is determined "without calibration." *See* '652 patent at cl. 1.

Yet Sandstone's claim chart makes no attempt to address how or whether the Vision Pro determines the eye gaze of a user in accordance with this no-calibration requirement. In relation to limitation 1[e], Sandstone's claim chart only pastes two screenshots from Apple's websites— one from an Apple press release and one from Apple's Vision Pro webpage—that describe generally that the Vision Pro has "responsive, precision eye tracking." ECF No. 9, Ex. 2 at 9–10. The screenshots lack any details suggesting that the Vision Pro's eye tracking is performed without calibration. *Id.* Nor does Sandstone provide any explanation beyond the screenshots; Sandstone only repeats the claim language in conclusory fashion:

| '652 Patent Claim Limitation | Sandstone's Infringement Allegation |
|---|---|
| 1[e] determining eye gaze of the user upon a said one or more marker without calibration relative to a said one or more marker, as indicative of the user's eye gaze at the surface, object, or visual scene. | The Apple Vision Pro determines eye gaze of the user upon a said one or more marker without calibration relative to a said one or more marker, as indicative of the user's eye gaze at the surface, object, or visual scene. |

*See* ECF No. 9, Ex. 2 at 9–10. As in *De La Vega*, Sandstone's allegation consists of the claim language and screenshots of evidence without "even a short written description of how the accused instrumentalities meet the … limitation." 2020 WL 3528411, at *6. This cannot plausibly state a claim for relief.

Sandstone's inadequate allegations are particularly egregious here because the public webpages Sandstone itself cites expressly contradict any alleged infringement by the Vision Pro. As those webpages show, far from any operation "without calibration," the Vision Pro *requires*

users to complete hand and eye setup (*i.e.*, calibration) before use. *See* ECF No. 9, Exs. 2 & 4 (citing Apple's Vision Pro webpage and User Guide). The Vision Pro User Guide, for example, explains that to "set up eyes and hands," each user is required to "look at [multiple] dot[s], and tap your fingers together to select it." Ex. A (Apple Vision Pro User Guide, https://support.apple.com/guide/apple-vision-pro/get-started-with-apple-vision-pro-tan489cfe222/visionos); *see also* Ex. B (Apple Vision Pro, https://www.apple.com/apple-vision-pro/) ("You can also save your most recent guest's eye and hand data, so they can skip their next setup.").[1] Notably, Sandstone cites to the Vision Pro's setup process showing that calibration is required in its claim chart for the '852 patent, as shown here:



*See* e.g., https://support.apple.com/guide/apple-vision-pro/get-started-with-apple-vision-pro-tan489cfe222/visionos

ECF No. 9, Ex. 4 at 27.

The setup required by the Vision Pro is exactly the type of calibration that the '652 patent distinguishes as what is *not* to be performed. *See, e.g.*, '652 patent at 2:29–33 (explaining that "[t]o calibrate the system," prior art systems asked the user "to look at a number of features (*i.e.*, calibration points) in the visual scene, typically dots on a screen") (emphasis added). Thus, even if Sandstone had sufficiently alleged infringement of claim 1 of the '652 patent (it did not), nothing

---

[1] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted).

in Sandstone's claim chart supports any inference of infringement where the only cited information demonstrates that the claim is not practiced. *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) (affirming dismissal where plaintiff failed to sufficiently plead infringement of *each* claim limitation, and where information contradicted plaintiff's conclusory allegations to the extent it was provided); *see also Ask Sydney, LLC v. Amazon.com Services, LLC*, 688 F. Supp. 3d 403, 433 (W.D. Tex. 2023) (dismissing for failure to plead direct infringement where the images in the claim chart were "inconsistent with the … limitation").

*The '852 patent.* Sandstone's allegations as to the '852 patent are similarly inadequate. Besides repeating the claim language for each limitation, Sandstone's claim chart includes only vague, conclusory statements about the Vision Pro that, even if true, would not plausibly allege infringement. Specifically, Sandstone's claim chart fails to sufficiently plead infringement of at least limitations 1[d] and 1[e] of the '852 patent, which require measurement of a "degree of the compression" or a "degree of the stretching" "in the expression information around the eye." '852 patent at cl. 1.

For these limitations, Sandstone again parrots the claim language and copies internet screenshots describing the Vision Pro's information inputs, which reportedly include the user's hands, eyes, and voice. *See* ECF No. 9, Ex. 4, at 26–34. But nothing in these screenshots or Sandstone's other statements mentions any measurement of compression or stretching at all, much less the specific compression or stretching measurement required by claim 1.

At most, Sandstone alleges without support that the Vision Pro "senses eye expression shapes" or "infers eye expressions by comparing information collected from around the eyes with a baseline reference value." *See* ECF No. 9, Ex. 4, at 30 (limitation 1[e]). These conclusory statements, even if true (and there is no cited information suggesting they are), still do not

9

sufficiently allege that the *specific* "compression" or "stretching" measurement is practiced by the Vision Pro. *See Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) ("Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met."). Accordingly, without more, Sandstone's Amended Complaint "is devoid of allegations that would support an inference" that the Vision Pro infringes the asserted patents. *De La Vega*, 2020 WL 3528411, at *6.

*          *          *

Because the Amended Complaint fails to set forth sufficient factual allegations that the accused product practices every limitation of at least one claim of each of the asserted patents, the allegations of direct infringement should be dismissed with prejudice. Dismissal with prejudice is particularly appropriate because Sandstone has already amended its pleading and continues to rely on claim charts that fail to plausibly allege infringement of material claim limitations. *See Grecia*, 605 F. Supp. 3d at 916–917 (dismissing inadequately pleaded infringement claims with prejudice); *De La Vega*, 2020 WL 3528411, at *7 (same).

### 2.    Sandstone's Post-Suit Induced and Willful Infringement Claims Should Also Be Dismissed

Sandstone's post-suit induced and willful infringement claims[2] should be dismissed because an underlying element of both inducement and willfulness claims is direct patent infringement, which as shown above, *supra* Section V.A.1, is insufficiently pled here. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("To prevail under a theory of indirect infringement, Dynacore must first prove that the defendants' actions led to direct

---

[2] The parties previously jointly dismissed the pre-suit indirect and willful infringement claims in Sandstone's Amended Complaint. ECF No. 12.

10

infringement of the [Asserted] Patent.") (citation omitted); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1055 (Fed. Cir. 2002) (reversing a finding of willful infringement where the finding of direct infringement was reversed). Sandstone's failure to plausibly allege direct infringement therefore dooms its allegations of induced infringement and willful infringement. *See, e.g.*, *De La Vega*, 2020 WL 3528411, at *7 (dismissing with prejudice indirect infringement allegations where direct infringement was not adequately pled); *Golden v. Google LLC*, 2025 WL 1752485, at *3 (Fed. Cir. June 25, 2025) ("Because Mr. Golden has failed to adequately plead direct infringement by Google, his complaint also fails to sufficiently plead indirect infringement and willful infringement.").

Furthermore, even if Sandstone's bare allegations were sufficient to plead direct infringement (they are not), Sandstone failed to plead the requisite elements to allege post-suit induced infringement and willful infringement. For induced infringement, Sandstone does not allege any facts that support a finding of specific intent, which separately requires dismissal of these claims. *See, e.g.*, *WirelessWerx IP, LLC. v. Verizon Communications, Inc.*, No. 7:25-CV-00198, ECF No. 31 at 5 (W.D. Tex. Oct. 6, 2025) (dismissing induced infringement claims where the plaintiff "alleged no specific facts to support the conclusory allegations which merely recited the necessary elements for those claims"). Similarly, for willful infringement, Sandstone failed to plausibly allege facts necessary to establish the requisite *post-suit* knowledge and intent to infringe the asserted patents. *See, e.g.*, *Datanet LLC v. Dropbox Inc.*, No. 6:22-CV-01142-OLG-DTG, 2023 WL 7118041, at *6 (W.D. Tex. Oct. 27, 2023) (dismissing post-suit willfulness because the complaint only pointed to the filing and service of the complaint, explaining "[w]hile such notice is sufficient knowledge of the patents, it does not provide the type of culpability required for willfulness").

11

**B.      The Claims of the '652 Patent Are Not Patent-Eligible**

The Federal Circuit has "repeatedly held that claims that organize, alter, or manipulate data, without more, are patent ineligible." *Longitude Licensing Ltd. v. Google LLC*, 2025 WL 1249136, at *2 (Fed. Cir. April 30, 2026). The claims of the '652 patent squarely fall within that category. Sandstone's infringement claims based on this patent should therefore be dismissed.[3]

**1.      *Alice* Step One: The Claims Recite the Abstract Idea of Collecting Image and Head Position Data and Analyzing It to Determine Eye Gaze**

The claims of the '652 patent fail at *Alice* Step One, as they are directed to the abstract idea of collecting image and head position data and analyzing it to determine eye gaze. Independent claim 1 is representative and recites:

> 1. A method for tracking a user's eye gaze at a surface, object, or visual scene, comprising:
>
> [a] providing an imaging device for acquiring images of at least one of the user's eyes;
>
> [b] modeling, measuring, estimating, and/or calibrating for the user's head position;
>
> [c] providing one or more markers associated with the surface, object, or visual scene for producing corresponding glints or reflections in the user's eyes;
>
> [d] analyzing the images to find said glints or reflections and/or the pupil; and
>
> [e] determining eye gaze of the user upon a said one or more marker without calibration relative to a said one or more marker, as indicative of the user's eye gaze at the surface, object, or visual scene.

'652 patent at 32:53–67.

---

[3] The '652 patent issued in 2011. Thus, it was not subject to post-*Alice* scrutiny during prosecution.

The '652 patent claims are generically directed to collecting image and head position data and analyzing it to determine eye gaze. As seen above, the claim requires (1) using a camera and markers to collect image and head position data (as described in limitations [a], [b], and [c]), (2) analyzing the data (limitation [d]), and (3) determining a result, the user's eye gaze (limitation [e]). The '652 patent claims therefore fall within the familiar class of data collection and analysis claims that the Federal Circuit has repeatedly held to be patent ineligible, even within the field of image technology. *Longitude Licensing*, 2025 WL 1249136, at *2 (holding ineligible a claim that "uses a computer to adjust parameters associated with the main object data (rather than data of the entire image, an approach previously undertaken by humans) without explaining how this result is achieved"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding ineligible claims where the "recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner"); *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (holding ineligible claims where "[o]nly conventional camera components [were] recited to effectuate the resulting 'enhanced' image" and the claims were "set forth at a high level of generality"). Fundamentally, the '652 patent claims are directed to collecting information, analyzing it, and determining a result—an idea routinely held to be abstract. *See, e.g.*, *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

As explained in *Longitude Licensing*, "[c]laims that merely implement longstanding activities and mental processes using new data and generic computing components without explaining how these arrangements actually result in the claimed improvement are … directed to unpatentable abstract ideas." 2025 WL 1249136, at *2, 4 (finding a claim ineligible where it "identifie[d] the technical improvement of more efficiently locating the subject of an image

13

without actually explaining how this process is achieved other than stating that the new data is used in identifying the main object"). Here, claim 1 of the '652 patent follows suit. It claims the process of taking photos of a person's face (*i.e.*, collecting image data) and, "without actually explaining how this process is achieved," determining where they are looking. *Id.* at *4. The claim requires "analyzing the images to find said glints or reflections and/or the pupil" and "determining eye gaze of the user upon a said one or more marker without calibration relative to a said one or more marker." *Id.* at cl. 1. That the claim is written in technical jargon does not save it from abstraction.

Much like the image processing claims in *Longitude Licensing*, the claims of the '652 patent are "framed entirely in functional, results-oriented terms" where "[n]one of the claims describes how these results are achieved." *Longitude Licensing*, 2025 WL 1249136, at *4; *see also Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (Claims that are drafted using "result-focused functional language, containing no specificity about how the purported invention achieves those results … are almost always found to be ineligible for patenting under Section 101.").

Importantly, although claim 1 is directed in significant part to "determining eye gaze of the user" ('652 patent at cl. 1 (limitation 1[e])), the claim does not specify *how* such determination is made. Rather, the claim states only the functional result to be achieved. Indeed, the claim does not recite any particular algorithm, data structure, or technical mechanism for identifying glints, locating the pupil, or computing the point of gaze. This is particularly problematic given that the claim purports to achieve eye gaze determination "without calibration." '652 patent at cl. 1. "[A] claim that merely describes an effect or result dissociated from any method by which [it] is accomplished is not directed to patent-eligible subject matter." *Apple, Inc. v. Ameranth, Inc.*,

842 F.3d 1229, 1244 (Fed. Cir. 2016) (quotation omitted); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (holding claims that required "functional results" without "sufficiently describ[ing] how to achieve these results in a non-abstract way" were directed to an abstract idea).

Contrasting claim 1 of the '652 patent to examples in similar fields of art that *are* patent-eligible further demonstrates that the '652 patent is directed to an abstract idea. For example, in *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017), the claims specified a "particular configuration of inertial sensors and a particular method of using the raw data from the sensors in order to more accurately calculate the position and orientation of an object on a moving platform." Unlike the results-oriented language of the claims of the '652 patent, the claims in *Thales* were written "to protect only the application of physics to the unconventional configuration of sensors as disclosed." *Id.*; *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368–70 (Fed. Cir. 2020) (The claimed heartbeat sensing device at issue "achieve[d] multiple technological improvements" by claiming "a device that detects beat-to-beat timing of cardiac activity, detects premature ventricular beats, and determines the relevance of the beat-to-beat timing to atrial fibrillation or atrial flutter, taking into account the variability in the beat-to-beat timing caused by premature ventricular beats identified by the device's ventricular beat detector."). Here, the '652 patent claims recite no equivalent "particular configuration" or "particular method." Rather, as demonstrated by the breadth of the claim language, the '652 patent is not directed toward any specific means to improve vision detection systems.

Nor do the claims of the '652 patent recite any "specific improvement to computer functionality," which the Federal Circuit has repeatedly held is a key indicator of abstractness. *See, e.g.*, *In re TLI*, 823 F.3d at 612. Much like the claims in *In re TLI*, which were directed to the

15

abstract idea of "classifying an image and storing the image based on its classification," the '652 patent claims are directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." 823 F.3d at 612. The claims of the '652 patent do not focus on any "specific means or method that solves a problem in an existing technological process" relating to imaging technology. *See Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025) (citation omitted). Rather, the claims recite a "process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 1212 (citation omitted).

Accordingly, the claims of the '652 patent are directed to the abstract idea of collecting image and head position data and analyzing it to determine eye gaze.

### 2.    *Alice* Step Two: The Claims Fail to Add an Inventive Concept

The claims of the '652 patent likewise fail at *Alice* Step Two. The limitations of claim 1, both individually and as an ordered combination, do not add an inventive concept to the abstract idea of collecting image and head position data and analyzing it to determine eye gaze. "[T]he second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citing *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)). Here, however, the '652 patent claims do *not* involve more than performing well-understood, routine, and conventional activities previously known in the art.

Importantly, the patent does not claim to have invented any new camera, any new illuminator, or any new computer vision technique. In fact, the patent acknowledges that off-the-shelf cameras and "any active light emitting or passive reflective material" can be used. '652 patent at 26:4–5; *see also id.* at 10:51–52. The specification does not describe any non-conventional

16

components or activities that amount to an inventive concept. In one example, the specification describes using "an *off-the-shelf* USB 2.0 snake camera" mounted on "an *off-the-shelf* Bluetooth microphone headset" and connected to a *standard* "Sony U70 PC." *Id.* at 26:4–15 (emphases added). The marker can consist of "two IR LEDs, a 3 V cell battery, and circuit." *Id.* at 26:55–58. The specification further acknowledges that prior eye tracking systems already used cameras, illuminators, and corneal reflections, and that computer vision techniques for identifying pupil centers and glint locations were known in the art. *Id.* at 2:4–17, 15:45–57. "In sum, the recited physical components behave exactly as expected according to their ordinary use." *In re TLI*, 823 F.3d at 615.

These are precisely the types of "off-the-shelf, conventional computer, network, and display technology" that the Federal Circuit has consistently held "insufficient to pass the test of an inventive concept." *Elec. Power Grp.*, 830 F.3d at 1355; *see also In re TLI*, 823 F.3d at 614 (holding that using a camera phone and server performing "basic computer functions such as sending and receiving data" was conventional); *Content Extraction*, 776 F.3d at 1348 ("There is no 'inventive concept' in [the patentee's] use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."). These claims lack an inventive concept and cannot transform the abstract idea into a patent-eligible application.

Nor do the '652 patent claims recite any implementation of the claimed methods or apparatuses that transform the claims into an inventive concept. As the Federal Circuit has repeatedly explained, "[i]n conducting the step-two inquiry, … it is not sufficient … for a claim to use functional, result-focused language or to encompass ordinary computers and networks to perform their ordinary functions in carrying out an abstract idea." *GoTV Streaming, LLC v. Netflix,*

*Inc.*, 166 F.4th 1053, 1067 (Fed. Cir. 2026) (collecting cases). To survive at step two, the claims must recite "concrete implementations" of *how* a specific function is carried out. *Id.* at 1067–68. Here, however, as described above, the '652 patent claims recite only result-focused language. *Supra* Section V.B.1. To the extent Sandstone attempts to argue that the '652 patent claims recite the inventive concept of determining a user's eye gaze "without calibration," that idea cannot save the claims. Eliminating calibration is not a technological improvement to the imaging or computing hardware or software. Nor can Sandstone identify a novel software implementation: the claims do not specify any algorithm, data structure, or other concrete mechanism for achieving calibration-free eye tracking; they merely claim the *result* of tracking "without calibration." *See* '652 patent at cl. 1. Moreover, even if the specification provided any non-abstract details (it does not, as discussed above), such details could not be imported to save the otherwise abstract claims.

### 3.    The Remaining '652 Patent Claims Likewise Are Not Patent Eligible

The remaining '652 patent claims are similarly directed to abstract data-gathering and analysis or merely narrow the abstract idea to particular environments. None is patent eligible.

**Dependent Claims 2, 4**: These claims merely add broad means of accounting for head position. '652 patent at 33:1–4, 33:16–18. The claims do not specify *how* the "modeling, measuring, estimating, and/or calibrating" is "effected," beyond the broad assertion that it is done "by adapting the imaging device" or "by face tracking." *Id.* Limiting the abstract idea to a particular implementation environment does not make it less abstract. *In re TLI*, 823 F.3d at 613.

**Dependent Claims 3, 5–8**: These claims add additional data analysis steps—determining which glints are closest to the pupil center, determining relative distances, and "interpolating" between marker locations. '652 patent at 33:5–15, 33:19–55. These are additional abstract mathematical computations. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 771 (Fed. Cir. 2019) (explaining that adding another abstract concept to an abstract idea "does nothing to make

18

this claim directed to something other than the abstract idea").

**Dependent Claims 9–15**: These claims specify conventional optical arrangements (on-axis and off-axis illuminators) and a known image subtraction technique. The specification acknowledges these were "techniques known in the art." '652 patent at 15:4–7. Reciting prior art technology cannot supply an inventive concept. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("Claim limitations that recite conventional, routine and well understood applications in the art are insufficient to supply an inventive concept.") (internal quotations and citations omitted).

**Dependent Claims 16–28**: These claims further specify abstract data management functions—identifying markers by patterns, codes, or wavelengths—or narrow the abstract idea to particular applications. None introduces any non-conventional technology. *See BSG Tech.*, 899 F.3d at 1290.

**Dependent Claims 29–34**: These claims merely narrow the abstract idea to particular commercial environments. *See GoTV*, 166 F.4th at 1064 ("[A]n abstract idea remains an abstract idea even when narrowed—*e.g.*, by subject matter—to a particular use or environment.").

**Independent Claim 35**: Claim 35 recites the same abstract idea as the method in claim 1, only modifying it to apparatus form with generic components: "an imaging device," "one or more markers," and "means for analyzing." The system claims are no more eligible than the method claims. *See Alice*, 573 U.S. at 226.

**Dependent Claims 36–51**: These claims merely add the same types of conventional components and functional limitations previously discussed, *see* claims 2, 9–10, 13, 16–28, but in apparatus form. *See Alice*, 573 U.S. at 226.

**Dependent Claims 52–56**: These claims extend the abstract idea to exchanging

19

information between users based on eye gaze, written in broad, results-oriented language. This adds only the further abstract concept of routing information based on gaze detection. *E.g.*, *Two-Way Media*, 874 F.3d at 1337 (finding a claim patent-ineligible where it "recite[d] a method for routing information using result-based functional language"). Such an additional abstract layer does not rescue the underlying ineligibility. *See ChargePoint*, 920 F.3d at 771 (explaining that adding another abstract concept to an abstract idea "does nothing to make this claim directed to something other than the abstract idea").

### 4. Further Amendment Would Be Futile

Because the determination of patent ineligibility in this case stems directly from the language of the '652 patent claims, which cannot be altered through amendment of the complaint, and the plaintiff has made "no factual allegations which would preclude dismissal," judgment without leave to amend and dismissal with prejudice is warranted. *See U.S. Pat. No. 7,679,637*, 164 F.4th at 1380 ("No amendment to the complaint can alter what the [asserted] patent itself states."); *see also VE Opening LLC v. Sprinklr, Inc.*, No. 1:25-CV-01736-ADA, 2026 WL 993979, at *10 (W.D. Tex. Apr. 10, 2026) (granting defendant's motion to dismiss and dismissing claim 1 with prejudice where it was directed to an abstract idea).

## VI. CONCLUSION

For the foregoing reasons, Sandstone has failed to plausibly state a claim for direct infringement, including by failing to articulate infringement of material limitations of the asserted patents. *Grecia*, 605 F. Supp. 3d at 916–917; *De La Vega*, 2020 WL 3528411, at *7. Apple therefore respectfully requests that the Court dismiss Sandstone's Amended Complaint with prejudice. Alternatively, Sandstone's Amended Complaint as to the '652 patent should be dismissed with prejudice because the claim language of the '652 patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101. *U.S. Pat. No. 7,679,637*, 164 F.4th at 1380.

Dated: June 24, 2026

Respectfully submitted,

*/s/ Steve Wingard*
Ranganath Sudarshan (*pro hac vice* pending)
Ashley Winkler (*pro hac vice* pending)
Steven A. Fisher (*pro hac vice* pending)
Christine Smith (*pro hac vice* pending)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
awinkler@cov.com
sfisher@cov.com
csmith@cov.com

Michael E. Bowlus
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission St., Ste. 5400
San Francisco, CA 94105
(415) 491-6000
mbowlus@cov.com

Steven J. Wingard
Texas Bar No. 00788694
Robert ("Robby") P. Earle
Texas Bar No. 24124566
Stephen L. Burbank
Texas Bar No. 24106972
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, Texas 78701
T: (512) 495-6300
F: (512) 495-6399
swingard@scottdoug.com
rearle@scottdoug.com
sburbank@scottdoug.com

*Attorneys for Defendant Apple Inc.*

21

## CERTIFICATE OF COMPLIANCE WITH OGP § VII

The undersigned certifies that counsel for Apple has complied with § VII of the Court's Standing Order Governing Proceedings (OGP). Counsel met and conferred on June 16, 2026, and Plaintiff agreed to dismiss its pre-suit indirect and willful infringement claims without prejudice, with leave to re-plead those allegations with specificity if supported by a good faith basis under Rule 11. The parties have filed a joint notice confirming their agreement to dismiss the pre-suit indirect and willful infringement claims. *See* ECF No. 12.

*/s/ Steve Wingard*
Steve Wingard

22

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served on this 24th of June 2026, with a copy of the foregoing via the Court's CM/ECF system.

_/s/ Steve Wingard_
Steve Wingard