# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | |
|---|---|
| SANDSTONE INNOVATION, LLC,<br><br>         Plaintiff,<br><br>         v.<br><br>APPLE INC.,<br><br>         Defendant. | Case No.  7:26-cv-00094-ADA<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT AGAINST APPLE INC.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Sandstone Innovation, LLC ("Plaintiff" or "Sandstone") makes the following allegations against Apple Inc. ("Defendant" or "Apple"):

## INTRODUCTION AND PARTIES

1. This complaint arises from Defendant's unlawful infringement of United States Patent Nos. 7,963,652 (the "'652 Patent") and 10,248,852 (the "'852 Patent") (collectively the "Asserted Patents"). Sandstone owns all right, title, and interest in the Asserted Patents to file this case.

2. Sandstone is a limited liability company incorporated under the laws of the State of Texas, with a location at 825 Watters Creek Blvd. Ste. 250, Allen, TX 75013-3770.

3. On information and belief, Defendant Apple Inc. is a publicly traded corporation organized under the laws of the State of California, with its principal place of business at One Apple Park Way, Cupertino, California 95014. Apple has one or more regular and established places of business in this District, including at 12545 Riata Vista Circle, Austin, TX 78727; 6900

W Parmer Lane, Austin, TX 78729; 320 S. Capital of Texas Hwy, West Lake Hills, TX 78746; 7400 San Pedro Avenue, San Antonio, TX 78216; 3121 Palm Way, Austin, TX 78758; 15900 La Cantera Parkway, San Antonio, TX 78256; 8401 Gateway Boulevard West, El Paso, TX 79925; and 2901 S Capital of Texas Hwy, Austin, TX, 78746. On information and belief, Apple may be served with process through its registered agent in Texas, CT Corporation System 1999 Bryan St., Suite 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products and services that infringe the Asserted Patents.

6. Venue as to Apple is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Apple resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

7. Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents. Defendant has

regular and established places of businesses in this District, including at 12545 Riata Vista Cir., Austin, Texas 78727 and 12801 Delcour Dr., Austin, Texas 78727.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 7,963,652

8.    Sandstone realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

9.    Sandstone owns all rights, title, and interest in U.S. Patent No. 7,963,652, titled "Method and apparatus for calibration-free eye tracking," issued on June 21, 2011 (the "'652 Patent"). A true and correct copy of the '652 Patent is attached as **Exhibit 1**.

10.    The written description of the '652 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

11.    The '652 patent's solution relocates the system's frame of reference from the user to the scene itself. As the Summary of the Invention explains, "[t]he invention provides a method and apparatus for eye gaze tracking in human or animal subjects without calibration of cameras, specific measurements of eye geometries or the tracking of a cursor image on a screen by the subject through a known trajectory." *Id.* at 3:36-40. The system embeds "off-axis illuminator markers" associated with the surface, object, or visual scene of interest. *Id.* at 3:40-44. "The off-axis markers are reflected on the corneal surface of the subject's eyes as glints." *Id.* at 3:44-45. Those reflections carry geometric information: "The glints indicate the distance between the point of gaze in the surface, object, or visual scene and the corresponding marker on the surface, object,

3

or visual scene." *Id.* at 3:45-48. And optical physics supplies the key relationship: "The marker that causes a glint to appear in the center of the subject's pupil is determined to be located on the line of regard of the subject's eye, and to intersect with the point of gaze." *Id.* at 3:48-51

12.    The specification then describes a concrete computational technique for exploiting that relationship. First, the system determines "which marker glints, as provided by the corneal reflections of the markers, are closest to the center of the pupil," a subset that "forms a region of interest (ROI)." *Id.* at 3:54-57. Second, it determines "the gaze vector (relative angular or Cartesian distance to the pupil center) for each of the glints in the ROI." *Id.* at 3:57-59. Third, it relates "each glint in the ROI to the location or identification (ID) of a corresponding marker on the surface, object, or visual scene." *Id.* at 3:59-61. Fourth, it interpolates "the known locations of each these markers . . . according to the relative angular distance to the pupil center of their corresponding glints." *Id.* at 3:62-65.

13.    Because the markers are anchored to the scene, the geometry travels with the scene. A user can walk up to an instrumented surface and be tracked immediately, with no operator, no calibration dots, and no head restraint. A wearable embodiment "allows for unlimited freedom of movement of the user through three-dimensional space." *Id.* at 17:45-46. The specification also discloses supporting optical techniques, including an on-axis illuminator aligned with the camera's optical axis and the subtraction of alternating on-axis and off-axis images to isolate the pupil and glints reliably, *id.* at 4:32-59, and techniques for identifying which marker produced which glint by spatial arrangement, coded blinking patterns, modulation, or wavelength, *id.* at 5:41-52.

14.    In this way, the claims of the '652 patent cover far more than collecting image and head position data and analyzing it to determine eye gaze. Instead, the claims are directed to a particular method to improve eye tracking. Additionally, the claims each have an inventive step.

While the inventor describes developing a prototype with "off-the-shelf" components, *id*. at 26:4-5, the claimed arrangement of those components was far from routine. The specification says the opposite: it expressly contrasts the claimed approach with conventional systems that required operator-assisted, per-user calibration, head restraint, and short working distances. '652 patent at 1:20–25, 2:29–33.

15.     Sandstone and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '652 patent, and Sandstone is entitled to damages for Defendant's past infringement.

16.     On information and belief, Defendant makes, uses, offers for sale, sell, and/or imports certain instrumentalities ("Accused Instrumentalities"), including Apple Vision Pro, that directly infringe, literally and/or under the doctrine of equivalents, one or more claim of the '652 Patent.

17.     The Accused Instrumentalities satisfy all claim limitations of one or more claims of the '652 Patent, including claim 1. A claim chart comparing independent claim 1 of the '652 patent to a representative Accused Instrumentality is attached as **Exhibit 2**, which is hereby incorporated by reference in its entirety.

18.     Defendant also knowingly and intentionally induces infringement of one or more claims of the '652 Patent in violation of 35 U.S.C. § 271(b). Through at least the filing and service of this Complaint and/or earlier, as set forth above, Defendant has had knowledge of the '652 Patent and the infringing nature of the Accused Instrumentalities. Despite this knowledge of the '652 Patent, Defendant continues to make, use, sell, and offer for sale the Accused Instrumentalities, and to actively encourage and instruct customers and other companies to make, use, sell, import, and offer for sale the Accused Instrumentalities in ways that directly infringe

the '652 Patent (for example, through user manuals and instruction materials on its website and/or otherwise provided to customers such as cited in Exhibit 2). Defendant does so knowing and intending that these companies and their customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '652 Patent, thereby specifically intending for and inducing its customers to infringe the '652 Patent through the customers' normal and customary use of the Accused Instrumentalities. Defendant also knew or was willfully blind that its actions would induce direct infringement by others and intended that their actions would induce direct infringement by others. Accordingly, a reasonable inference is that Defendant specifically intended for others, such as its authorized third parties, end users, or customers, to directly infringe one or more claims of Plaintiff's '652 Patent in the United States because Defendant had knowledge of the '652 Patent and actively induced others (*e.g.,* its customers) to directly infringe the '652 Patent.

19. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured Plaintiff and is liable for infringement of the '652 Patent pursuant to 35 U.S.C. § 271.

20. As a result of Defendant's infringement of the '652 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

21. Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '652 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

22. Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '652 Patent through making, using, selling, offering to sell and/or importing Accused Products with knowledge that these activities infringe the '652 Patent. Plaintiff is therefore entitled to enhanced damages.

23. Plaintiff's '652 Patent is valid and enforceable.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 10,248,852

24. Sandstone realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

25. Sandstone owns all rights, title, and interest in U.S. Patent No. 10,248,852, titled "Method for recognizing facial expression of headset wearing user and apparatus enabling the same," issued on April 2, 2019 (the "'852 Patent"). A true and correct copy of the '852 Patent is attached as **Exhibit 3.**

26. The written description of the '852 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27. Sandstone and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '852 patent, and Sandstone is entitled to damages for Defendant's past infringement.

28. On information and belief, Defendant makes, uses, offers for sale, sell, and/or imports certain instrumentalities ("Accused Instrumentalities"), including Apple Vision Pro, that

directly infringe, literally and/or under the doctrine of equivalents, one or more claim of the '852 Patent.

29.    The Accused Instrumentalities satisfy all claim limitations of one or more claims of the '852 Patent, including claim 1. A claim chart comparing independent claim 1 of the '852 Patent to a representative Accused Instrumentality is attached as **Exhibit 4**, which is hereby incorporated by reference in its entirety.

30.    Defendant also knowingly and intentionally induces infringement of one or more claims of the '852 Patent in violation of 35 U.S.C. § 271(b). Through at least the filing and service of this Complaint and/or earlier, as set forth above, Defendant has had knowledge of the '852 Patent and the infringing nature of the Accused Instrumentalities. Despite this knowledge of the '852 Patent, Defendant continues to make, use, sell, and offer for sale the Accused Instrumentalities, and to actively encourage and instruct customers and other companies to make, use, sell, import, and offer for sale the Accused Instrumentalities in ways that directly infringe the '852 Patent (for example, through user manuals and instruction materials on its website and/or otherwise provided to customers such as those cited in Exhibit 4). Defendant does so knowing and intending that these companies and their customers will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '852 Patent, thereby specifically intending for and inducing its customers to infringe the '852 Patent through the customers' normal and customary use of the Accused Instrumentalities. Defendant also knew or was willfully blind that its actions would induce direct infringement by others and intended that their actions would induce direct infringement by others. Accordingly, a reasonable inference is that Defendant specifically intended for others, such as its authorized third parties, end users, or customers, to directly infringe one or

more claims of Plaintiff's '852 Patent in the United States because Defendant had knowledge of the '852 Patent and actively induced others (*e.g.,* its customers) to directly infringe the '852 Patent.

31.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendant has injured Plaintiff and is liable for infringement of the '852 Patent pursuant to 35 U.S.C. § 271.

32.    As a result of Defendant's infringement of the '852 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

33.    Defendant's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '852 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

34.    Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '852 Patent through making, using, selling, offering to sell and/or importing Accused Products with knowledge that these activities infringe the '852 Patent. Plaintiff is therefore entitled to enhanced damages.

35.    Plaintiff's '852 Patent is valid and enforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Sandstone respectfully requests that this Court enter:

a.    A judgment in favor of Sandstone that Defendant has infringed the Asserted Patents, either literally and/or under the doctrine of equivalents;

b.    A judgment in favor of Plaintiff that Defendant has induced infringement of the

Asserted Patents;

c.     A judgment and order requiring Defendant to pay Sandstone its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Asserted Patents;

d.     A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Sandstone, including without limitation, pre-judgment and post-judgment interest;

e.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Sandstone its reasonable attorneys' fees against Defendant; and

f.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Sandstone, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: July 15, 2026

Respectfully submitted,

*/s/ Reza Mirzaie*
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Christian Conkle (CA SBN 306374)
cconkle@raklaw.com
Joshua Scheufler (CA SBN 330462)
jscheufler@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone: 310-826-7474

*Attorneys for Plaintiff*
*Sandstone Innovation, LLC*

11

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served on this 15th of July 2026, with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Reza Mirzaie*
Reza Mirzaie
